IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31849-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD MONROE HARDING, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, A.C.J. – Richard M. Harding appeals his second degree assault–domestic violence conviction, contending his public trial right was violated when the trial court continued his trial date, allegedly, in chambers and outside his presence. Mr. Harding further contends the court erred by abusing its discretion in allowing ER 404(b) evidence of prior bad acts. We affirm.

FACTS

A motel guest heard yelling at a nearby recreational vehicle park. The guest looked out her window and saw a man grab a woman later identified as Julie Hall, by the back of the neck and threw her down the front steps of a motor home, injuring her head. The guest called the front desk clerk who called the police. The clerk overheard Mr. Harding calling Ms. Hall names and believed Ms. Hall looked delirious. The clerk

warned Mr. Harding police were on their way. Ms. Hall informed the responding officers she and Mr. Harding were arguing when he started calling her names; he then choked her and eventually threw her on the ground. The State charged Mr. Harding with second degree assault–domestic violence. Mr. Harding's defense was denial and fabrication by Ms. Hall.

Mr. Harding was originally scheduled for trial on July 9, 2013 before a visiting judge. The day before, defense counsel stated, "Your Honor, we are asking to go to trial tomorrow." Report of Proceedings (RP) at 10. The State requested a continuance because the assigned prosecutor was on military leave. The State advised the judge another, unrelated case was scheduled for the next day and it had speedy-trial priority over Mr. Harding's case. Mr. Harding's speedy trial expiration was not until August 2. The court denied the State's continuance request and ordered both cases to proceed to trial the next day, explaining, "What we are going to do is work off of the assumption that [the other case] is going to trial tomorrow [but] we are going to trail your matter for tomorrow in the event that [the other defendant] pleads guilty or continues it." RP at 15.

The next day, defense counsel alone appeared. Another judge was presiding. Counsel was informed, in open court, that the other case was going forward and Mr. Harding's counsel was "excused." Clerk's Papers at 87. The same day, the court routinely sent an amended scheduling order resetting Mr. Harding's trial date, without objection.

2

Before trial, the State asked to introduce evidence under ER 404(b) of two prior incidents of domestic violence between Mr. Harding and Ms. Hall. The State told the court the first incident occurred in July 2012, and resulted in Mr. Harding being convicted of fourth degree assault–domestic violence, and a second assault charge in March 2013 but charges were dismissed. The State offered a "bona fide Judgment and Sentence from 2012" and a "police report" as proof of the prior bad acts. RP at 36. Mr. Harding objected, arguing it would be "highly prejudicial." RP at 36. The court allowed the evidence, finding it was relevant and probative as to Ms. Hall's credibility, in light of Mr. Harding's assertion she had fabricated the recent account. The trial court acknowledged the evidence was "potentially prejudicial but I think it's also probative as to those particular issues." RP at 41.

The jury found Mr. Harding guilty as charged. He appealed.

ANALYSIS

A. Public Trial

The issue is whether the trial court erred by violating Mr. Harding's public trial right when continuing his trial in chambers outside his presence. Mr. Harding contends the granting of a continuance in chambers on the day of trial and without his presence amounted to a courtroom closure subject to *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). The State responds by disagreeing the continuance was decided "in chambers" and alternatively argues, even if it was, no public trial violation occurred.

3

Defendants have a constitutional right to a public trial. CONST. art. I, § 22; U.S. CONST. amend. VI. A public trial helps assure that the trial is fair; it allows the public to see justice done, and it serves to hold the justice system accountable. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012) (citing *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)). In *Bone-Club*, our Supreme Court "enumerated five criteria that a trial court must consider on the record in order to close trial proceedings to the public." *Wise*, 176 Wn.2d at 10 (citing *Bone-Club*, 128 Wn.2d at 258-59). A defendant whose trial is closed without considering the *Bone-Club* factors has been deprived of his or her public trial right. Such a deprivation "is a structural error presumed to be prejudicial." *Wise*, 176 Wn.2d at 14. The remedy is a new trial. *State v. Paumier*, 176 Wn.2d 29, 35-37, 288 P.3d 1126 (2012). "Whether a defendant's right to a public trial has been violated is a question of law, subject to de novo review on direct appeal." *State v. Smith*, 181 Wn.2d 508, 334 P.3d 1049, 1052, 334 P.3d 1049 (2014) (citing *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)).

We "'begin by examining . . . whether the public trial right is implicated at all . . . then turn to the question whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, whether . . . the closure was justified.'" *Smith*, 181 Wn.2d 508, 334 P.3d 1049, 1052 (quoting *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). We use the experience and logic test to evaluate whether a particular proceeding implicates the public trial right. *Sublett*, 176 Wn.2d at 94. The experience prong of the test asks

4

whether the practice, place, or procedure in question has historically been open to the public. *Id.* The logic prong asks whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* If both prongs are satisfied, then the court must apply a five-factor test to evaluate whether a proposed closure is constitutional. *Bone-Club*, 128 Wn.2d at 258-59.

Here, experience and logic suggests no public trial right is implicated when the court grants a contingent continuance the day before trial in a trailing case situation. The trail-case-continuance contingency was fully explained on the record with all parties present. The next day, when the priority matter went to trial bumping Mr. Harding's case, the continuance was self-executing; Mr. Harding's attorney alone appeared on the record of the first case and was excused and the matter was routinely reset as contemplated in open court. Washington does not require a defendant's presence at a continuance hearing. *State v. Moore*, 178 Wn. App. 489, 504, 314 P.3d 1137 (2013). "A status conference is not a hearing at which [a criminal defendant's] appearance is required under CrR 3.4(a)." *State v. Raschka*, 124 Wn. App. 103, 109, 100 P.3d 339 (2004).

Given this record, we conclude the trial court did not violate Mr. Harding's right to a public trial.

## B. ER 404(b)

The issue is whether the trial court erred by abusing its discretion in admitting the prior domestic violence evidence under ER 404(b).

We review the admission of evidence under ER 404(b) for an abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). The trial court abuses its discretion when its decision is manifestly unreasonable or rests on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Under ER 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Before admitting ER 404(b) evidence, a trial court must "'(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *State v. Gunderson*, ___ Wn.2d ___, 337 P.3d 1090 (No. 89297-1, 2014 WL 6601061, at *3 (Nov. 20, 2014) (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). "This analysis must be conducted on the record." *Foxhoven*, 161 Wn.2d at 175.

Initially, Mr. Harding contends the trial court failed to conduct its analysis on the record. But the trial court returned to the bench after a recess and ruled the evidence was relevant and probative, particularly as to Ms. Hall's credibility, in light of Mr. Harding's fabrication claim. The trial court acknowledged the evidence was "potentially prejudicial but I think it's also probative as to those particular issues." RP at 41. While

the court did not specifically address whether the misconduct occurred, the record shows the State provided the court and defense counsel a judgment and sentence and police report to show the misconduct occurred; moreover, Mr. Harding did not object to a lack of supporting documents. The State offered detailed information about the prior bad acts on the record. We may rely upon a narrative offer of proof by the attorney offering the evidence, explaining what the evidence will show if admitted. *State v. Kilgore*, 147 Wn.2d 288, 295, 53 P.3d 974 (2002).

Next, Mr. Harding contends the trial court erred in finding the probative value outweighed the prejudicial effect. The court found the probative value went to allowing the fact finder to assess Ms. Hall's state of mind and likelihood of fabricating her statement. Washington courts have recognized that evidence of misconduct is admissible to prove the alleged victim's state of mind. *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009) (citing *State v. Nelson*, 131 Wn. App. 108, 116, 125 P.3d 1008 (2006)). In *Nelson*, another domestic violence case, this court reasoned the trial court did not err in allowing evidence of past physical abuse to rebut the defense's claim that the victim was "lying" and "fabricated" the assault. *Nelson*, 131 Wn. App. at 116.

Here, like in *Nelson*, the prior domestic violence acts were probative to rebut Mr. Harding's claim that Ms. Hall fabricated the recent charges and to assess Ms. Hall's credibility. Evidence of prior misconduct is highly prejudicial. *State v. Burton*, 101 Wn.2d 1, 9, 676 P.2d 975 (1984). But, in this case the court decided the probative value outweighed the prejudicial effect.

7

Recently, our Supreme Court addressed whether the trial court abused its discretion in allowing evidence of two prior domestic violence convictions to impeach testimony from the alleged victim. *Gunderson*, ___ Wn.2d ___, 337 P.3d 1090 (2014 WL 6601061, at *1). But, there, the victim never stated that the defendant assaulted her and testified to the same at trial. *Id.* The trial court, nevertheless, allowed the prior domestic violence evidence. Our Supreme Court reversed, holding, "Because [the alleged victim] did not make conflicting statements and did not recant and the State did not articulate some other compelling justification, the probative value of this evidence is limited in comparison to its significant prejudicial effect." *Id.* at *5.

Our case is distinguishable because Mr. Harding's defense was that Ms. Hall was lying and her allegations were fabricated due to mental illness. This compelling justification has probative value that outweighs the prejudicial effect of admitting the evidence.

Nevertheless, any error in admitting the prior bad acts would be harmless. This requires us to decide whether "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *Gunderson*, ___ Wn.2d ___, 337 P.3d 1090 (2014 WL 6601061, at *4) (quoting *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)). Here, it is reasonably probable that the admission of the prior domestic violence did not materially affect the outcome of the trial. The jury heard from both Ms. Hall and Mr. Harding, leaving the jury to decide whether the victim had fabricated the most recent allegation and was not credible. The

jury also heard testimony from two eye witnesses to the events that night, both corroborating Ms. Hall's testimony. Therefore, it is not reasonably probable that admission of the ER 404(b) evidence affected the outcome of the case.

In sum, the trial court had tenable grounds to allow the ER 404(b) evidence. Therefore, we conclude it did not abuse its discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

9